IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ROBERT E. KRAMER | § | |
|    TDCJ-CID #643733 | § | |
| v. | § | C.A. NO. V-09-036 |
| | § | |
| SAMUEL T. BOSCO, ET AL. | § | |

**OPINION AND ORDER DISMISSING ACTION**

Plaintiff is a state inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), currently incarcerated at the Montford Unit in Lubbock, Texas. He filed this civil rights claim pursuant to 42 U.S.C. § 1983. For the reasons set forth below, Plaintiff's claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. After consent by Plaintiff, (D.E. 4), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 11); see also 28 U.S.C. § 636(c).

**II. FACTUAL ALLEGATIONS**

On March 28, 2005, Plaintiff filed suit in Travis County District Court against Rissie Owens. (D.E. 1, at 2). He alleges that the lawsuit was dismissed on May 26, 2005 at a hearing that neither Plaintiff nor a representative attended. Id. He was not notified of the hearing in advance, and he was not advised of the dismissal afterwards. Id.

On November 4, 2005, Plaintiff was released on parole from Texas state prison and began living at a halfway house. Id. He visited the Travis County District Clerk's office on November

14, 2005 to provide his new address.  Id.  Only then was Plaintiff verbally informed that his suit had been dismissed.  Id.

On December 1, 2005, Plaintiff was arrested for violating his parole and placed in the Travis County Jail.  Id. at 3.  Shortly thereafter he was transferred to an intermediate sanction facility, where he remained until June 9, 2006.  Id.

On August 28, 2006, Plaintiff was arrested for another parole violation and sent back to the Travis County Jail.  Id.  At his arrest, he had $500 on his person.  Id.  The Jail garnished approximately $80 for medical co-pays relating to his incarceration in December 2005.  Id.  Plaintiff was returned to an intermediate sanction facility and was in custody there until March 2007.  Id.  While housed there, he used his prison trust fund account to make commissary purchases and receive money from relatives.  Id.

In December 2007, Plaintiff left the Texas without the permission of his parole officer.  Id.  On June 10, 2008, he was arrested in California and extradited back to Texas.  Id.  On June 30, 2008, he entered TDCJ and was housed at the Byrd Unit.  Id.  During the intake process, Plaintiff was permitted to retain his shower shoes, eye glasses, and a small cross.  Id.  With respect to the other personal property, he was instructed that he could either donate, destroy, or mail out the items at his own expense.  Id. at 3-4.  Plaintiff elected to donate his clothing, destroy his cell phone, and mail the phone's SIM card and various pieces of jewelry.  Id. at 4.  The items selected for mailing were placed in a small box and weighed.  Id. at 4.  Plaintiff was directed to bring the unit property officer five stamps within fourteen days, and was given a receipt for the $7 he had in his property from California.  Id. at 4.  On July 9, 2008, he attempted to purchase stamps at the commissary, and was told that the $7 did not appear in his trust fund account.  On July 16, 2008,

unbeknownst to Plaintiff, a friend deposited $30 by wire transfer into his account. Id. That same day, Plaintiff spoke to the property officer at the Byrd Unit to request that his property not be destroyed and to determine what became of the $7. Id. On July 17, 2008, Plaintiff was transferred to the Goree Unit. Id.

On July 17, 2008, Plaintiff tried to buy stamps at the Goree Unit commissary and was again told that his trust fund account contained no funds. Id. at 5. He sent a form to the Byrd Unit property officer on July 20, 2008, reiterating his request that she not destroy his property and promising to provide her the stamps as soon as he could. Id. On July 29, 2008, he was transferred to the Stevenson Unit, where he sought in vain to purchase the stamps and was informed again that his trust fund account was empty. Id. On August 12, 2008, the form was returned with a notice that his property had been destroyed on July 25, 2008. Id. On May 13, 2009, Plaintiff filed this complaint. (D.E. 1).

### III.  PLAINTIFF'S CLAIMS

Plaintiff argues that Travis County Judge Samuel T. Bisco and Travis County District Clerk Amalia Rodriguez-Mendoza violated his due process rights by failing to notify him of a court order, thereby denying him his right to appeal. (D.E. 1, at 4). He further argues that Defendants unconstitutionally garnished his prison trust fund account. (D.E. 1-1, at 2). Plaintiff seeks a declaratory judgment, a preliminary injunction, a return of his money, a discontinuation of the garnishment, and punitive and compensatory damages. Id. at 5-7.

### IV.  DISCUSSION

**A.    The Legal Standard For Screening Inmate Civil Rights Actions.**

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996),

any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee, or proceeds as a pauper.  Id.; Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted).  His pro se complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam), and his allegations must be accepted as true, unless they are irrational or wholly incredible.  Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim "'when it is clear that the plaintiff can prove no set of facts in support of his claim'" entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).

**B.      Plaintiff's Claim Are Barred By Immunity.**

    **1.      Defendant Judge Bisco is entitled to judicial immunity.**

The Supreme Court has established that "generally, a judge is immune from a suit for money damages."  Mireles v. Waco, 502 U.S. 9, 9 (1991) (per curiam) (citations omitted).  Judicial immunity serves to safeguard "'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to

himself.'" Id. at 10 (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)); see also Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'") (citation omitted). Judicial immunity is overcome only when the acts were "not taken in the judge's judicial capacity," or when they were "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12 (citations omitted).

    The Fifth Circuit has further explained that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions." Boyd v. Biggers 31 F.3d 279, 284 (5th Cir. 1995) (per curiam); see also Bauer v. Texas, 341 F.3d 352, 357 (5th Cir. 2003) ("Judges enjoy absolute immunity from liability for judicial or adjudicatory acts.") (citing Forrester v. White, 484 U.S. 219 (1988)). "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" Boyd, 31 F.3d at 285 (quoting Mireles, 502 U.S. at 12). In determining whether an act was judicial in nature, courts should consider four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

Ballard v. Wall, 413 F.3d 510, 515 (5th Cir. 2005) (quoting Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993)).

    To the extent Plaintiff's claims against Defendant Judge Bisco have any content, they are focused on the manner in which he presided over the state civil action filed on March 28, 2005.

Such conduct manifestly falls into the category protected from suit, and Plaintiff's claims against him therefore fail to overcome judicial immunity. Accordingly, Plaintiff's claims against Defendant Judge Bisco are dismissed with prejudice as barred by judicial immunity.

### 2. Defendant Rodriguez-Mendoza is entitled to quasi-judicial immunity.

Courthouse clerks "'have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process.'" Mylett v. Mullican, 992 F.2d 1347, 1352 n.36 (5th Cir. 1993) (citation omitted). Defendant Rodriguez-Mendoza's decisions with respect to notifying litigants of events in their cases are plainly tasks that are an integral part of the judicial process, and are therefore shielded by absolute quasi-judicial immunity. See Brooks v. George Cnty., Miss., 84 F.3d 157, 169 (5th Cir. 1996) (court clerk had no affirmative duty to notify defendant that criminal charges against him had been dismissed) (citations omitted). Accordingly, Petitioner's claims against Defendant Rodriguez-Mendoza are barred by quasi-judicial immunity.

### C. Plaintiff's Remaining Claims Are Dismissed For Lack Of Involvement By Defendants.

Personal involvement in an alleged constitutional deprivation is an essential element of a civil rights cause of action. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)). Failing a showing of personal involvement, a plaintiff can only establish liability by demonstrating that an official had supervisory authority such that a "causal connection" links his purported acts to "the constitutional violation sought to be redressed." Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted).

Plaintiff does not allege that Defendants had any role in the acts concerning his trust fund account and property in prison, nor does his complaint suggest that they would have been

so involved. Accordingly, his remaining claims are dismissed for lack of involvement by Defendants.

## V. CONCLUSION

For the reasons stated above, plaintiff's claims are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). **The Clerk is directed to provide copies of this order to the parties, to the TDCJ–Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159, and to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.**

ORDERED this 15th day of August 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE